Sam REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–680–CR.

Court of Appeals of Texas,
Corpus Christi.

April 15, 1999.

Rehearing Overruled May 27, 1999.

Joe A. Cisneros, Cisneros & Cisneros, McAllen, Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, McAllen, for Appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Edinburg, Robert Huttash, State Pros. Atty., Matthew W. Paul, State Atty., Austin, for State.

Before Chief Justice SEERDEN and Justices YAÑEZ and CHAVEZ.

## OPINION

Opinion by Justice YAÑEZ.

A jury convicted Sam Reed of aggravated sexual assault[1] in September of 1993, and assessed punishment at ten years imprisonment and a $10,000 fine. The trial judge ordered that appellant's sentence be probated as recommended by the jury.

On appeal, this court reversed and remanded to the trial court with instructions to enter an acquittal because the evidence failed to show that the offense occurred "on or about" June 1, 1990, as charged in the indictment. The Court of Criminal Appeals granted petition for discretionary review, vacated this court's prior judgment, and remanded to this court for consideration of appellant's remaining points of error.

In eleven points of error, appellant challenges his conviction based on the legal and factual sufficiency of the evidence, improper jury argument, juror misconduct, jury charge error, the constitutionality of

---

1. The trial judge partially granted Reed's motion for instructed verdict and dismissed two counts of indecency with a child charged in the indictment.

article 38.07 of the code of criminal procedure, and cumulative trial errors. We reverse and remand for a new trial.

### FACTS

"J.M." testified at trial that appellant, a high school teacher, sexually assaulted him at the residence of Juan Ramirez, another school teacher. J.M., age sixteen at the time of trial, testified that he had only seen appellant on two previous occasions. The first time was at Reed's house. The second time was at Ramirez's house when the alleged offense took place.

According to J.M., he went with a friend, "R.T.", to Ramirez's house. Appellant was also at Ramirez's house. The four went to a bedroom and J.M., R.T., and Ramirez sat on a bed. Appellant offered J.M. a soda, which he accepted. J.M. stated that he noticed "some white stuff" "floating on top" of the soda and that Reed stated that the drink would make him feel good. After drinking the soda, J.M. felt "drowsy, slow-minded." J.M. further testified that Ramirez grabbed his hands and turned him face down on the bed. Ramirez and Reed undressed J.M. Ramirez held him down, and appellant placed his penis in J.M.'s anus. J.M. cried and screamed because it hurt. He then felt something warm and slimy on his back. J.M. testified that appellant then made him touch R.T.'s "private parts." J.M. said that Reed and Ramirez threatened to kill him and R.T. if they ever revealed what had happened.

J.M. testified he was thirteen years old at the time of the offense, and that he knew he was thirteen because he was in the sixth grade. After consulting school records, Mauro Vasquez, J.M.'s junior high school principal, testified that J.M. was retained in the second grade and again in the sixth grade. Vasquez also stated that J.M. was in sixth grade during the 1989–1990 school year and again during the 1990–1991 school year.

The evidence showed that J.M. made two statements to personnel at the Hidalgo County District Attorney's office. The first statement, signed January 13, 1993, said nothing about the offense in question in this case, but stated that J.M. went to Reed's house "after July 4 of 1992." J.M. made a second statement on May 3, 1993, in which he stated that Reed sexually assaulted him at Ramirez's house around Valentine's Day when he was in the sixth grade. The second statement said that J.M. had gone to Reed's house about three weeks before the alleged offense occurred.

Carmen de los Santos, a school district employee who helps students who have dropped out return to school, contacted J.M. in November 1992 for this purpose. J.M. resided in the de los Santos household from December 1992 to January 1993. De los Santos testified that J.M. was extremely withdrawn and sometimes showered hourly because as he once remarked he "just [felt] real dirty." The first time J.M. revealed the alleged sexual assault to anyone was when he confided in de los Santos on April 30, 1993. J.M. had testified before the grand jury in April of 1993, but did not disclose the sexual assault. At trial, J.M. told the jury that he failed to inform the grand jury of the incident because he "wasn't ready" to tell anyone yet.

Dr. Petra Alvarez Diaz, a psychologist, testified that a several-year delay in revealing sexual abuse is not uncommon for adolescent victims of sexual abuse. Dr. Diaz did testify, however, that an adolescent would most likely remember when a traumatic event, such as a sexual assault, occurred, unless the child was a "slow learner" or had a cognitive disability. She stated that victims of sexual abuse may become very slovenly in their personal hygiene or may become excessively clean.

The only other available alleged eyewitness to the offense, R.T., testified that the sexual assault never took place, that he did not know Reed, and that he had never been to Ramirez's or Reed's house. Two witnesses testified that R.T. claimed to know Reed and talked about going to

Reed's house. One witness testified that she attended sixth grade with R.T. and J.M., walked home from school with them, and that R.T. would sometimes go to appellant's house after school. She specifically named two other youths who she saw on one occasion in Reed's carport with R.T. At trial, these youths denied that they ever went to Reed's house.

## LEGAL AND FACTUAL SUFFICIENCY

In his second and third points of error, appellant challenges the legal and factual sufficiency of the evidence. Specifically, appellant claims that the State failed to prove that the victim was under the age of fourteen at the time of the alleged offense.

In performing a legal sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex.Crim.App. 1995).

In reviewing the factual sufficiency of the evidence, we must view all the evidence without the prism of "in the light most favorable to the verdict" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996). A court of appeals may not reverse a jury's decision simply because it disagrees with the result; the appellate

court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). The court of appeals must consider the evidence as a whole, not viewing it in the light most favorable to either party. *Id.* at 408.

The Texas Penal Code provides that the offense of sexual assault is committed if a person intentionally or knowingly caused the penetration of the anus of a child by any means, *see* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i) (Vernon 1994), or caused the anus of a child to contact the sexual organ of another person. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(iv) (Vernon 1994). When the victim is younger than fourteen years old at the time of the offense, the sexual assault is aggravated. *See* TEX. PEN.CODE ANN. § 22.021(a)(2)(B) (Vernon 1994). Where, as here, the only aggravating factor is the victim's age, proving that the victim was under the age of fourteen is an essential element of the offense. *See id.*

The grand jury indicted Reed for causing his sexual organ to contact and to penetrate the victim's anus on or about June 1, 1990. The indictment alleged that the victim was under the age of fourteen at the time of the offense.

▬▬▬ When an indictment alleges a facially complete offense, and the State's theory is consistent with the indictment, sufficiency of the evidence is measured by the indictment as incorporated in the charge.[2] *Fisher v. State*, 887 S.W.2d 49,

---

2. As the State recognized in oral argument, *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997), does not alter our factual sufficiency analysis in this case because the charge accurately sets forth the elements of the offense. The charge in this case also instructed the jury that if it found the victim to be fourteen or older at the time of the offense, such a finding would require the jury to find the defendant not guilty, unless it found the victim made an outcry within six months of the offense or unless it found independent corroborating evidence. Appellant

complains of the "fourteen or over" instruction, which he requested, in a separate point of error. The indictment in this case specifies that the victim was under fourteen at the time of the offense and the State did not argue that the victim was fourteen or older at the time of the offense in jury argument. The complained of instructions are not relevant to our sufficiency discussion. *See Fisher*, 887 S.W.2d at 58 (holding that where jury instruction improperly expands upon the allegations in the indictment, reviewing court should dis-

57 (Tex.Crim.App.1994). In this case, the trial judge instructed the jury that to return a guilty verdict, it had to find that

> on or about the 1st day of June, 1990, the Defendant, Sam Reed, did then and there intentionally or knowingly cause his sexual organ to either contact or to penetrate the anus of [J.M.] and that the said [J.M.] was a child younger than seventeen years (17) of age and not the spouse of the Defendant, and that the said [J.M.] was then and there younger than fourteen (14) years of age . . .

■ In his legal sufficiency point, appellant argues that the victim's testimony may not be used to demonstrate that he was under the age of fourteen at the time of the offense unless such testimony is corroborated by other evidence.

■ At the time of the offense, article 38.07 of the Texas Code of Criminal Procedure allowed a conviction for aggravated sexual assault to be supported on the uncorroborated testimony of the victim, provided that the State showed that the victim disclosed the offense to someone other than the defendant within six months of the incident.[3] *See* Act of May 26, 1983, 68th Leg., R.S., ch. 382, § 1, 1983 Tex. Gen. Laws 2090, Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 7, 1983 Tex. Gen. Laws 5319, (amended 1993) (current version at TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp.1999)). · The requirement that the victim inform another person within six months did not apply if the victim was younger than fourteen at the time of the offense. *See id.; see also Scoggan v. State,* 799 S.W.2d 679, 682–83 (Tex.Crim.App.1990). Because article 38.07 provided no special requirement that the State provide independent evidence that the victim was under fourteen, and we have found no case law to this effect, we find appellant's contention that the State

needed to provide independent proof of the victim's age at the time of the offense without merit.

We now proceed with a legal sufficiency review. J.M. testified that his birthday is November 27, 1976. To prove the offense alleged in the indictment, the State had to provide evidence that the incident took place before J.M.'s fourteenth birthday, which was November 27, 1990. On direct examination, J.M. testified · that the incident occurred when he was thirteen and in the sixth grade. He stated once that the alleged offense took place in 1986, but corrected himself and testified that the incident occurred after sixth grade, in July of 1990. On cross-examination, J.M. stated that the incident occurred in July of 1989. Thus, the evidence, viewed in the light most favorable to the verdict, shows that J.M. was twelve or thirteen at the time of the offense.

We hold the evidence is legally sufficient to establish beyond a reasonable doubt that the victim was under age fourteen at the time of the offense. Appellant's second point of error is overruled.

To review the factual sufficiency of the evidence, we look to the entire record. On cross-examination, defense counsel attempted to impeach J.M. with prior statements which contradicted his trial testimony that the offense took place in July of 1989 or July of 1990. J.M. confirmed that in his first statement to the district attorney's office he stated he went to Reed's house "after July 4 of 1992," but indicated that this date was "just a guess." J.M. admitted that his second statement alleged he was sexually assaulted by Reed three weeks prior to going to Reed's house. J.M. also acknowledged on cross-examination that in his second statement to the district attorney's office, he alleged that the offense occurred around Valentine's

---

regard expansive language in measuring sufficiency of the evidence).

**3.** Article 38.07 now requires that the victim make an outcry within one year of the alleged

offense; no outcry or corroboration is required if the victim is younger than eighteen at the time of the offense. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp.1999).

Day in his sixth grade year. Regardless of J.M.'s prior statements and his direct examination testimony that the offense occurred in 1990 and cross-examination testimony that it occurred in 1989, he consistently stated at trial that he was thirteen years of age when the offense transpired.

After reviewing the record, we cannot say that the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. We conclude that a rational juror could find that the victim was under the age of fourteen at the time of the offense. We overrule point of error three.

Appellant's fourth and fifth points of error, framed as legal and factual sufficiency challenges and closely related to the aforementioned points of error, are essentially complaints regarding the self-contradictory nature of the victim's testimony.

■ The jury is the exclusive judge of the facts proved and the weight of the testimony. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The fact that a witness makes contradictory or inconsistent statements does not destroy his testimony as a matter of law. *McDonald v. State,* 462 S.W.2d 40, 41 (Tex.Crim.App. 1971) (evidence legally sufficient to support aggravated assault conviction based on prosecuting witness' testimony even though her testimony was inconsistent). The weight to be given contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *See Cain,* 958 S.W.2d at 408–09. As such, this court may not second-guess the jury, who had the opportunity to observe the witness' demeanor, expressions, gestures, and tone during his testimony.

■ As fact finder, the jury is entitled to judge not only the credibility of each witness, but to accept some portions of a witness' testimony and reject other portions. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.

1982). The jury resolves any conflicts between testimony of a State's witness and his prior testimony. *Flores v. State,* 372 S.W.2d 687, 689 (Tex.Crim.App.1963). Thus, any conflicts between J.M.'s trial testimony and his prior statements are matters for the jury to reconcile. Points of error four and five are overruled.

In his first point of error, appellant argues that the trial court reversibly erred in entering a judgment and conviction contrary to the law and evidence adduced at trial. Appellant briefs and argues this point in conjunction with points of error two through four. Based on our disposition of points two through four, we overrule point of error one.

## CHARGE ERROR

■ By his eighth point, appellant raises the issue of error in the jury charge. Specifically, appellant alleges that the trial judge erred in instructing the jury that if it found the victim to be fourteen or over at the time of the offense, it would also need to find either that the victim made a timely outcry or independent corroborating evidence of the offense. We note that appellant requested the instructions of which he complains and that the instructions accurately state the law. We do not reach the merits of appellant's complaint.

■ The Court of Criminal Appeals consistently has held that if a defendant requests a charge and the charge is submitted as requested, the defendant is in no position to complain of that charge on appeal. *Livingston v. State,* 739 S.W.2d 311, 341 (Tex.Crim.App.1987); *Gutierrez v. State,* 659 S.W.2d 423, 424 (Tex.Crim.App. 1983). Even if the charge is later found to be erroneous, the accused may not first invite error and then complain about it on appeal. *Tucker v. State,* 771 S.W.2d 523, 534 (Tex.Crim.App.1988); *Cadd v. State,* 587 S.W.2d 736, 741 (Tex.Crim.App.1979). Because the trial judge charged the jury in the exact manner requested by appellant,

the error, if any, is invited. Point of error eight is overruled.

## CONSTITUTIONALITY OF ARTICLE 38.07

■ In points of error nine and ten, appellant claims that article 38.07 of the code of criminal procedure violated his right to due process under both the federal and state constitutions. Appellant never raised this issue at the trial court and these points of error receive cursory treatment in his brief. Nevertheless, the constitutionality of a statute on which a conviction is based may be raised for the first time on appeal. *Casares v. State*, 768 S.W.2d 298, 299 (Tex.Crim.App.1989); *Rabb v. State*, 730 S.W.2d 751, 752 (Tex. Crim.App.1987).

At the time of trial, article 38.07 read as follows:

TESTIMONY IN CORROBORATION OF VICTIM OF SEXUAL OFFENSE. A conviction under Chapter 21, Section 22.0011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred. *The requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than 14 years of age at the time of the alleged offense.*

Act of May 26, 1983, 68th Leg., R.S., ch. 382, § 1, 1983 Tex. Gen. Laws 2090, Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 7, 1983 Tex. Gen. Laws 5319, (amended 1993) (current version at TEX.CODE CRIM. PROC. ANN. Art. 38.07 (Vernon Supp.1999)). [Emphasis supplied].

Appellant argues that article 38.07 creates a statutory presumption that a witness under the age of fourteen is inherently more believable than a witness fourteen or older. The statute is unconstitutional, according to appellant, because this presumption as to credibility is irrational and arbitrary.

■ Our analysis of the constitutionality of a statute begins with the presumption that the legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due regard for constitutional requirements. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim. App.1978). Every reasonable intendment and presumption is made in favor of constitutionality and validity of the statute until the contrary is clearly shown. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App. 1979); *Skillern v. State*, 890 S.W.2d 849, 860 (Tex.App.—Austin 1994, pet. ref'd). It is appellant's burden to show that the statute is unconstitutional. *See Granviel*, 561 S.W.2d at 511.

■ Generally speaking, the need to corroborate the testimony of a sexual assault victim stems from the notion that the victim, if over the age of consent, could be an accomplice rather than a victim. *See Lawson v. State*, 722 S.W.2d 1, 2 (Tex. App.—Dallas 1986, no pet.). The testimony of an accomplice may never support a conviction without corroboration. *See* TEX. CODE CRIM. PROC. ANN., art. 38.14 (Vernon 1979). Consent is not an issue where the charged offense is sexual assault of a child because a victim under seventeen is legally incapable of consenting to the types of sexual relations described in the statute. *Jones v. State*, 789 S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Rather than creating a presumption as to the credibility of witnesses, article 38.07 simply recognizes that because child victims cannot be accomplices, there is no need to require corroboration, or alternatively, timely outcry.

■ We have found no reported cases in which a Texas court has addressed a similar challenge to the constitutionality of article 38.07. We recognize, however, that some courts have questioned the legislature's rationale in failing to exempt from the timely outcry or corroboration require-

ments victims at least fourteen but less than eighteen because they are generally incapable of consent and therefore may not be accomplices. *Friedel v. State,* 832 S.W.2d 420, 422 (Tex.App.—Austin [1st Dist.] 1992, no pet.) (holding that testimony of victim who was fifteen at the time of alleged aggravated sexual assault required corroboration or timely outcry, but questioned the rationale behind the statute); *Jones,* 789 S.W.2d at 333 n. 1 (questioning legislature's distinction between victims under and over fourteen because a victim's fear, embarrassment, or shame, which may prevent or delay the victim in informing another person of the assault does not automatically abate when the victim reaches fourteen). In apparent response to these concerns, the legislature amended article 38.07 in 1993 to provide that a sexual assault conviction is supportable on the uncorroborated testimony of a victim under the age of eighteen. *See* Tex.Code Crim. Proc. Ann. art 38.07 (Vernon Supp. 1999).

After a careful analysis of the history and purpose of article 38.07, we reject appellant's argument that the statute is arbitrary and irrational in the manner in which he contends. We hold that appellant's state and federal constitutional rights to due process under law were not violated by article 38.07. Points nine and ten are overruled.

### IMPROPER JURY ARGUMENT

In his sixth point, Reed argues that the trial court abused its discretion in denying his motion for new trial based on the prosecutor's improper jury argument. In closing argument, the prosecutor stated as follows:

Why would [J.M.] tell the stories that he did? Remember when [Dr. Diaz] told you about guilt, confusion and denial. Again, the types of things that fit classically into what we've seen in this courtroom, what you've heard about [J.M.] and about the situation that he was in. *Even the story about seeing somebody*

*else being raped.* Looking through the window, that also, was a scream, ladies and gentlemen—

. . . .

Is this a young man that's lying to you? About what happened? No? That he told lies before, that he did not always speak the truth, that's correct. But even that in itself tells you that he was screaming. *He wanted the world to know that Sam Reed was doing this to the children in his community.* He didn't want the world to know that it happened to him.

[Emphasis supplied.]

Defense counsel made timely objections to both arguments. The trial judge sustained the objections in both instances, and briefly instructed the jury to disregard the prosecutor's prior statements. After each instruction to disregard, defense counsel moved for a mistrial and the trial judge overruled these motions. Thus, the errors are properly preserved.

■ In order to be appropriate, jury argument must fall within one of the following areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea for law enforcement. *Hughes v. State,* 878 S.W.2d 142, 157–58 (Tex.Crim.App.1992). Because the prosecutorial arguments complained of in this case do not fall within any of these categories, we conclude they were improper.

■ Improper jury argument is usually cured by an instruction to disregard, unless, in light of the record as a whole, it was extreme or manifestly improper, violated a mandatory statute, or injected new facts harmful to the accused. *Cooks v. State,* 844 S.W.2d 697, 727 (Tex. Crim.App.1992); *Hernandez v. State,* 819 S.W.2d 806, 820 (Tex.Crim.App.1991). An instruction to disregard will not cure a remark which is so inflammatory that its prejudicial effect cannot be reasonably re-

moved. *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App.1985).

The first step in our analysis is to determine whether the improper arguments were cured by an instruction to disregard. The prosecutor's remark about "seeing somebody else being raped" is a reference to a portion of J.M.'s prior statement which had never been introduced in evidence. Both the prosecutor and defense counsel had elicited testimony from J.M. that he had been to Reed's house on a previous occasion. By agreement, however, neither side allowed J.M. to testify that he claimed to have witnessed someone else being raped at Reed's house. During a hearing on its motion for new trial, defense counsel questioned juror Marci Bishop as follows:

> COUNSEL: [B]oth attorneys for the prosecution and I, attorney for Mr. Reed, very cautiously tried to keep away from asking [J.M.] what it was that he had seen in Sam Reed's house. During—and that happened several times during the testimony, during the trial before you even began to deliberate on whether Mr. Reed was guilty or not guilty, were some of the jurors asking what it was that he had seen?
>
> WITNESS: Well, of course. I was, also. Everybody wanted to know.
>
> COUNSEL: Ma'am?
>
> WITNESS: We all wanted to know, yes.
>
> COUNSEL: But nobody told you?
>
> WITNESS: No.
>
> COUNSEL: Until it was said by Mr. Garza in the jury summation?
>
> WITNESS: That's correct.

Based on juror Bishop's testimony,[4] there is no question that the jury understood the reference and concluded that J.M. claimed to have seen someone else being raped at Reed's house. Thus, the prosecutor's argument placed before the jury new, prejudicial information about separate allegations of a rape at appellant's house. We conclude this error was not cured by an instruction.

An instruction to disregard also failed to cure the second improper comment that J.M. "wanted the world to know that Sam Reed was doing this to the children in his community." First, a prosecutor is prohibited from making references to extraneous offenses for which the accused is not on trial. *See Melton v. State*, 713 S.W.2d 107, 114 (Tex.Crim.App. 1986) (conviction for theft reversed where prosecutor's comment imputed to defendants theft of other equipment even though there was no such evidence in the record); *Lomas v. State*, 707 S.W.2d 566, 568–70 (Tex.Crim.App.1986) (prosecutor's argument during punishment phase which invited jury to consider collateral incident, which occurred four months after offense, warranted reversal). Second, there is a distinction between argument which asks a jury to consider other victims of sexual abuse generally and argument which calls on the jury to consider other victims of the accused. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex.Crim.App.1990) (argument which asked jury to consider generally "victims of other crimes" and "the ones who never come and tell you about it" without directly referring to defendant or other possible victims of defendant held to

---

4. The State never objected to this questioning, most likely because the trial judge had the discretion to allow it. *See Buentello v. State*, 826 S.W.2d 610, 614 (Tex.Crim.App.1992). Texas Rule of Criminal Evidence 606(b), in effect at the time of the motion for new trial hearing, provided that

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations

or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.*

[Emphasis supplied.] The juror's testimony is not central to our discussion.

be proper plea for law enforcement). The prosecutor's argument suggested that appellant had sexually assaulted other children in the community. In a case alleging a single aggravated sexual assault against one child, a reference to other possible victims of the appellant was extremely prejudicial, and was not cured by an instruction to disregard.

■ The next step in our analysis is determining whether the error is harmless. Under Texas Rule of Appellate Procedure 44.2, the court of appeals may reverse a conviction for a non-constitutional error only if it determines that the error affects a substantial right of the defendant.[5] *See* TEX.R.APP. P. § 44.2(b). Improper prosecutorial comments are non-constitutional errors, but may affect the substantial rights of the defendant. *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

■ A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998) (conviction reversed where no fair assurance that erroneous admission of witness statement and reference to extraneous murder may have influenced jury).

Some of the factors reviewing courts look to in determining whether errors had a substantial and injurious effect or influence on the jury include the amount of evidence in the record supporting the jury's verdict and the emphasis placed on the improper conduct. *King,* 953 S.W.2d at 271–73. Another factor worthy of consideration is the cumulative effect of multiple errors. *Stahl v. State,* 749 S.W.2d 826 (Tex.Crim.App.1988). In examining these factors, the appellate court evaluates whether the potential impact on the jury is more than slight. *King,* 953 S.W.2d at 271–73.

Even though such a process necessarily involves some speculation on the part of the appellate court, we must consider the effect of these improper arguments on the jury. With regard to the evidence supporting the conviction, we recognize that this is not a case where the jury was presented with overwhelming evidence of the appellant's guilt; the only direct evidence of the offense is the testimony of the prosecuting witness. In evaluating the emphasis placed on the error, we acknowledge that the prosecutor immediately retreated from the arguments after the objections were sustained. Yet, it is troubling that in one of the arguments the prosecutor revealed information that both sides had been careful to keep from the jury during the presentation of evidence. The fact that the State agreed not to question J.M. about claiming to have seen "somebody else being raped" shows that the prosecutor recognized the prejudicial nature of this information.

> In approving the current Texas Rules of Appellate Procedure, which became effective September 1, 1997, the Court of Criminal Appeals ordered that the current rules would apply to all appeals—even pending appeals—unless such application "would work injustice." We apply the current Rule 44.2 in this case because we reach the same result as we would under the former Rule 81(b)(2).

---

5. During the course of this appeal, the applicable harmless error standard has changed. Former Texas Rule of Appellate Procedure 81(b)(2) provided that the appellate court "shall reverse the judgment under review," unless it "determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment." The current Texas Rule of Appellate Procedure 44.2(b) provides that a non-constitutional error which "does not affect substantial rights must be disregarded."

The State argues that the effect of the first improper argument is ameliorated because it is a reference to a "story," a falsehood. Viewing the comment in the context of the entire trial and argument, we cannot say that the jury necessarily considered it a falsehood. J.M. admitted to fabricating *part* of the statement in which he claimed to have gone to Reed's house, but not *all* of the statement. In fact, the only part of the statement that J.M. admitted to have lied about was that instead of looking through the windows at Reed's house, he was inside the house. Because the error occurred during the State's rebuttal argument, defense counsel never had an opportunity to cross-examine J.M. regarding the rape he claimed to have witnessed, or even to respond to the errors in argument.

The second remark that J.M. "wanted the world to know that Sam Reed was doing this to children in his community" suggests that there were other children who had been sexually assaulted by the defendant. While there was evidence in the record of another investigation involving Reed, and defense counsel referred to another, future trial of the defendant after objecting and moving for a mistrial, the record contains no reference to other sexual assaults allegedly committed by the defendant. Thus, the jury's verdict may have been improperly swayed by the suggestion that Reed had sexually assaulted other children in the community. The State argues that this remark merely refers to the fact that J.M. wanted the world to know what was happening, but not that it was happening to him, and that the reference to "children" rather than "a single, unidentified child" was "inartful," "loose language." We are unpersuaded by these arguments for several reasons. First, J.M. never expressed this desire in his testimony. Second, the law is well established that in this context, a reference to other victims of the defendant is prejudicial. The prosecutor should have recognized that such a reference was not even arguably proper and avoided it entirely.

The errors in this case did not transpire in the middle of the trial where any harmful effect may have been attenuated. Instead, the errors took place immediately prior to the jury beginning its deliberations. We base our decision on the cumulative, injurious effect of two prejudicial prosecutorial arguments which suggest appellant's involvement in extraneous, but similar offenses. Considering the aforementioned factors, we have no fair assurance that the improper arguments in this case did not influence the jury's verdict, or that they had only a slight effect on the jury's verdict. Appellant's sixth point of error is sustained.

We need not address appellant's two remaining points of error as they are unnecessary to the disposition of this case. *See* TEX.R.APP. P. 47.1.

We REVERSE and REMAND for a new trial.

Dissenting opinion by Chief Justice ROBERT J. SEERDEN.

Dissenting Opinion by Chief Justice SEERDEN.

I respectfully dissent from the majority's conclusion that improper jury argument requires a reversal of the trial court's judgment.

The majority focuses on two isolated statements by the prosecutor during closing argument. Both occurred when the prosecutor discussed the credibility of the complainant when he accused Reed of molesting him. One of those comments was:

"[Complainant] wanted the world to know that Sam Reed was doing this to the children in his community."

The majority concludes that, by using the plural "the children," rather than restricting it to "a child," the prosecutor implied that Reed was guilty of molesting other children as well, and thus improperly alluded to extraneous offenses not before

the jury. I do not find this to be such an implication in the necessary statement.

People often generalize from a single instance of certain behavior to describe the actor as one who generally engages in such behavior. In the present case, the complainant was one of the "children in [Reed's] community." Thus, if Reed molested him, it would not be unusual in common parlance to speak of Reed as one who molests the *children* in his community.

Using such an expression does not necessarily accuse the defendant of an extraneous offense, nor does it invite the jury to speculate about other offenses.

The other comment Reed complains about was:

> "Even the story about seeing somebody else being raped. Looking through the window, that also, was a scream, . . . ."

This statement does imply that the complainant told someone that he had seen someone else being raped while looking through a window. In context, the implication is that complainant saw Reed rape someone else. But, we have no further details of this story. While I agree that the remark was improper, I do not believe that it was harmful.

Formerly, improper jury argument amounted to reversible error "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *See* prior Tex.R.App. P. 81(b)(2). Under the 1997 Texas Rules of Appellate Procedure, the standard for harm analysis changed. With regard to non-constitutional error in criminal cases, which includes improper prosecutorial argument, we now disregard the error unless it "affects substantial rights." Tex.R.App. P. 44.2(b); *see Maibauer v. State,* 968 S.W.2d 502, 508 (Tex.App.—Waco 1998, pet. ref'd); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd) (citing numerous federal cases interpreting similar harm analysis in Federal Rule of Criminal Procedure 52). A substantial right is thus affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Under prior harm analysis of Old Rule 81(b)(2), an instruction to disregard had a substantial impact on whether the error was considered harmful. Accordingly, when the trial court sustained an objection and instructed the jury to disregard the prosecutor's improper remark, any potential harm was presumably cured, unless the remark was so inflammatory that its prejudicial effect could not have been reasonably removed by the instruction to disregard. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.1995). We have tacitly applied these same principles to harm analysis under New Rule 44.2(b). *See Zayas v. State,* 972 S.W.2d 779, 784 (Tex. App.—Corpus Christi 1998, pet. ref'd). Nor do I see any reason not to continue to apply them under the new "substantial rights" harm analysis.

Therefore, in the present case, unless the prosecutor's remark concerning the complainant's story about seeing someone else being raped was so inflammatory that its prejudicial effect could not have been reasonably removed by the trial court's instruction to disregard, it does not affect a substantial right or require reversal.

There was no indication when or where the alleged rape took place, who was raped, or how the complainant happened to be looking through the window at the time. Without any further details of the alleged extraneous rape, the remark was nothing more than a passing comment easily disregarded and forgotten by the jury. Vague implications of this nature, that do not suggest any of the circumstances surrounding the alleged extraneous offense, do not generally rise to the level of substantial or injurious influence upon the

jury sufficient to find harmful error. *See Holmes v. State*, 962 S.W.2d 663, 673 (Tex. App.—Waco 1998, pet. ref'd, untimely filed).

Moreover, as the complainant was the primary witness against Reed concerning the charged offense, his own credibility is not necessarily enhanced because he told a "story" concerning some other rape. In other words, if the complainant had lied about the charged offense, he was just as likely to have also fabricated the extraneous rape. In short, I do not believe that the prosecutor's improper remark was so inflammatory that its prejudicial effect was not reasonably removed by the trial court's instruction to disregard, and thus it did not have such a substantial and injurious effect or influence in determining the jury's verdict as to rise to the level of reversible error under Rule 44.2(b).

I would overrule point six and address the remaining points of error.